UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

United States of America                    **MEMORANDUM & ORDER**

   - against -                              No. 14-cr-652 (KAM)
                                  No. 20-cr-104 (KAM)

Shmuel Gali, *also known as* Sam
Gali,

         Defendant.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Defendant Shmuel Gali is serving a sixty-month federal prison sentence in the two above-referenced prosecutions for various offenses related to his used vehicle business. (ECF No. 89, Judgment in Crim. Case ("Judgment").)[1] Proceeding *pro se*, Gali now collaterally challenges his federal custody in accordance with 28 U.S.C. § 2255, alleging that his trial attorney was constitutionally ineffective by failing to investigate potentially sentence-mitigating evidence and failing to protect his right to appeal.[2] (ECF No. 104, Mot. to Vacate ("Mot.").) Gali also moves for discovery, an evidentiary

---

[1] The Government prosecuted Gali in two separate criminal actions in the Eastern District of New York, Case Nos. 14-cr-652 and 20-cr-104, but the two actions concern the same facts. (*See infra* p. 5.) Citations to the docket are to Case No. 14-cr-652 unless otherwise noted.

[2] *Pro se* filings are held to less rigorous standards than counseled filings are. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, a *pro se* motion under 28 U.S.C. § 2255 is construed liberally to raise the strongest arguments it suggests. *Waiters v. United States*, 472 F. Supp. 3d 7, 13 (E.D.N.Y. 2020). Because Gali proceeds *pro se*, the Court accords his motion that liberal construction.

hearing, appointment of counsel, and restoration of his right to appeal.  (*Id.* 5m; ECF No. 117, Mot. for Leave to Reply ("Reply") p. 14.)  For the reasons stated below, the Court respectfully denies Gali's motion in its entirety.

<u>BACKGROUND</u>

## I.    Factual Background

Between 2006 and 2011, Shmuel Gali and his brother, Chaim Gali, orchestrated a scheme to sell vehicles with falsified odometers and fraudulently obtained title information at inflated prices.[3]  During that period, the brothers bought 693 used vehicles from several franchises of a vehicle rental company using fictitious names and claiming to represent fictitious dealerships.  (ECF No. 71, Presentence Investigation Rep. ("PSR") ¶¶ 19-20.)  They sought out rental vehicles because they knew rental vehicle companies frequently did not report vehicle mileages to vehicle history companies, which obscured the true mileages of their fleets.  (*Id.* ¶ 19.)  After they bought the vehicles, the brothers "rolled back" their odometers to reflect lower mileage figures.  (*Id.* ¶ 22.)  Then, they altered the vehicles' paperwork and brought the falsified paperwork to the Pennsylvania Department of Transportation to obtain new title documents reflecting the lower odometer figures.  (*Id.* ¶¶ 23-24.)  Finally, they repaired and

---

[3] Any reference solely to "Gali" refers to Shmuel unless otherwise noted.

reconditioned the vehicles to make them appear newer and consistent with their rolled back mileages.  (*Id.* ¶ 25.)

The brothers sold the 693 "clocked" vehicles at wholesale auto auctions in Pennsylvania and New Jersey to unwitting licensed used vehicle dealers, who in turn sold them to unwitting retail customers – the ultimate victims of the scheme – for a profit.  (*Id.* ¶ 26.)  The victims not only paid inflated prices upfront but also paid higher financing fees, insurance fees, and repair costs.  (*Id.*)  On average, the odometer of one of the Galis' clocked vehicles had been rolled back nearly 70,000 miles, (*id.*), and the victim who bought it suffered $6,000 in loss, (*id.* ¶ 30).

Significantly, as will be discussed below, (*see infra* pp. 9–11), the brothers sold most of the vehicles through Manheim Auto Auction in Pennsylvania under the entities "Chase Auto Center, Inc." and "Conestoga City Autos."  (*See id.* ¶ 27.) After Manheim confronted the Galis about their vehicles' odometers, however, the brothers began selling through a different facility in New Jersey.  (*Id.*)

The brothers then laundered the proceeds of their sales through the bank accounts of entities they created until they arrived in legitimate accounts they controlled.  (*Id.* ¶ 28.) The brothers invested some of the laundered funds in additional used vehicles, thus perpetuating the scheme, and used other

3

funds to pay personal expenses.  (*Id.*)  Unbeknownst to them,
several state and federal agencies in New York and Pennsylvania
had been investigating their activities.  (*Id.* ¶¶ 15–17.)

## II.  Procedural Background

### A.   Guilty Plea

A grand jury in the Eastern District of Pennsylvania
indicted Shmuel and Chaim Gali on December 4, 2014, on various
fraud, false statements, and conspiracy charges.  Indictment,
*United States v. Gali*, Case No. 14-cr-634 (E.D. Pa. Dec. 4,
2014), ECF No. 1.  A different grand jury in the Eastern
District of New York indicted them on December 18, 2014, for
conspiring to commit mail fraud, wire fraud, and money
laundering, thus commencing the instant action.  (ECF No. 1,
Indictment.)

Chaim was arrested in New York on January 6, 2014, (ECF
No. 6, Arrest Warrant), and arraigned before this Court, where
he pleaded not guilty to all charges, (ECF No. 3, Calendar:
Magistrate's Proceeding).  Chaim later agreed to plead guilty to
some of the charges, (ECF No. 22, Crim. Cause for Pleading), and
consented to transfer the charges pending in the Eastern
District of Pennsylvania to the Eastern District of New York,
Consent to Transfer of Case for Plea & Sentence, *United States
v. Gali*, Case No. 14-cr-634 (E.D. Pa. Mar. 10, 2015), ECF No. 7.
He was sentenced on June 28, 2021, to slightly over one year of

4

imprisonment, (ECF No. 86, Judgment in Crim. Case), and released

from prison on July 14, 2022, *see* https://www.bop.gov/inmateloc.

Shmuel moved to Israel in 2010 and was not arraigned until

December 13, 2019, after his extradition to the United States,

at which point he pleaded not guilty to all charges.  (PSR

¶¶ 72, 80; ECF No. 41, Minute Entry for Crim. Proceeding.)  He

too consented to transfer the charges against him in the Eastern

District of Pennsylvania to the Eastern District of New York.

Consent to Transfer of Case for Plea & Sentence, *United States*

*v. Gali*, Case No. 14-cr-634 (E.D. Pa. Mar. 3, 2020), ECF No. 13.[4]

Shmuel later withdrew his plea and pleaded guilty to some of the

charges through a plea agreement with the Government.  (ECF

No. 63, Crim. Cause for Pleading; *see* ECF No. 64, Plea

Agreement.)  In his plea agreement, he agreed "not to file an

appeal or otherwise challenge, by petition pursuant to 28 U.S.C.

§ 2255 or any other provision, the conviction or sentence in the

event that the Court impose[d] a term of imprisonment at or

below 97 months or below [sic]."[5]  (Plea Agreement ¶ 4.)

**B.  Sentencing**

When the Court inquired at Gali's sentencing as to his plan

---

[4] The transferred charges from the Eastern District of Pennsylvania became
Case No. 20-cr-104 in the Eastern District of New York.
[5] The plea agreement does not bar the claims Gali raises here because it
carves out "claim[s] of ineffective assistance of counsel [raised] in an
appropriate forum" from the waiver, (*see* Plea Agreement ¶ 4), and Gali's
claims solely concern alleged ineffective assistance of counsel, (*see infra*
pp. 13-20).

for providing restitution to his victims, Emouna replied that
Gali was penniless but planned to pay whatever he could in the
future.  (ECF No. 90-2, Sentencing Hr'g Tr. 18:13-20, 27:25-
28:4.)  The Court explained that there were over 600 victims
harmed over the course of five years and told Emouna that it had
expected Gali to present a more comprehensive restitution plan.
(*Id.* 28:5-29:4, 29:23-30:3, 30:9-18, 36:18-37:4.)

The Court calculated Gali's advisory guidelines sentence
range as seventy to eighty-seven months of imprisonment.  (*Id.*
47:18-21.)  The Government and the Probation Department each
requested that the Court impose a seventy-month sentence, the
low end of that range.  (*Id.* 56:22-57:2.)  After considering the
guidelines and the relevant sentencing factors as required by
18 U.S.C. § 3553(a), however, the Court imposed a below-
guidelines sentence.  The Court found Gali's offense "serious"
due to its magnitude, time span, and sophistication.  (*Id.*
52:12-18.)  On the other hand, the Court acknowledged the
positive letters of support from Gali's friends and family and
from a charitable organization for whom he worked.  (*Id.* 56:12-
17.)

The Court imposed a sentence of sixty months of
imprisonment, to be followed by four years of supervised release
with conditions.  (*Id.* 58:11-60:11.)  It declined to impose a
fine and accepted the Government's withdrawal of its forfeiture

request.  (*Id.* 60:12-17.)  It imposed a restitution obligation

of $3,936,000, joint and several with Chaim's obligation, due to

the 656 identified victims and payable to the Clerk of Court.

(*Id.* 60:21-61:14.)  The Court explained that restitution was a

condition of supervised release and that Gali would have to pay

it at a minimum of $25 per month while in custody and $500 per

month or twenty-five percent of his gross monthly income (after

deductions required by law) after release.  (*Id.* 63:18-64:12.)

Finally, the Court advised Gali that he had to file any

notice of appeal within fourteen days after entry of the

judgment.  (*Id.* 64:18-20.)  The Court explained that the Clerk

of Court would prepare a notice of appeal if Emouna requested

one, and it requested Emouna to ensure that Gali's appellate

rights would be protected and that he would have counsel on

appeal.  (*Id.* 64:18-24.)  The Court entered judgment on July 2,

2021.

## C.  Appeal

Gali, acting *pro se*, timely filed a notice of appeal as to

his conviction and sentence on July 14, 2021.[6]  (Case

No. 20-cr-104, ECF No. 20.)  Because Gali intended to argue that

Emouna was ineffective, Emouna moved the Second Circuit to

permit him to withdraw as Gali's counsel and also moved that

---

[6] Emouna states that he drafted the notice and sent it to Gali by email on
July 13, 2021.  (ECF No. 114-4, Aff. of Matin Emouna ¶ 5.)

court to appoint substitute counsel.  Mot. to Withdraw as
Counsel, *United States v. Gali*, No. 21-1718 (2d Cir. Aug. 10,
2021), ECF No. 19.  The Second Circuit granted the motion and
appointed Elizabeth M. Johnson as Gali's new attorney.  Order,
*United States v. Gali*, No. 21-1718 (2d Cir. Aug. 12, 2021), ECF
No. 24.

The Government moved to dismiss the appeal based on the
appellate waiver in Gali's plea agreement.  Mot. for Dismissal
of Appeal, *United States v. Gali*, Case No. 21-1718 (2d Cir.
Sept. 14, 2021), ECF No. 36.  Johnson responded by filing a
motion to withdraw as counsel and an *Anders* brief.[7]  *See* Mot. for
Permission to Withdraw, *United States v. Gali*, No. 21-1718
(2d Cir. Dec. 10, 2021), ECF No. 41.  In support of her motion,
Johnson filed an affidavit stating that she told Gali on
September 10, 2021, that she intended to file an *Anders* brief
due to the appellate waiver and had explained to him the
implications of that filing.  *Id.* ¶ 4.  Johnson further stated
that Gali told her he understood.  *Id.*  Finally, Johnson stated
that she sent Gali a copy of the Government's motion to dismiss,
her affidavit, the *Anders* brief, and the Second Circuit's
scheduling order.  *Id.* ¶¶ 5-6.  Gali never filed a response.

Gali surrendered to the Bureau of Prisons on October 4,

---

[7] Filing an *Anders* brief is the procedure that appellate counsel must follow
when he or she believes that the client has no non-frivolous issues to raise
on appeal.  (*See infra* p. 21.)

2021.  (ECF No. 114-4, Aff. of Matin Emouna ("Emouna Aff.")
¶ 8.)  The Second Circuit granted Johnson's motion to withdraw,
granted the Government's motion to dismiss the appeal, and
summarily affirmed Gali's conviction and sentence on August 1,
2022.  (Case No. 20-cr-104, ECF No. 29, Mandate.)

###   D.   Collateral Challenge

Gali filed the instant motion to vacate under 28 U.S.C.
§ 2255 on June 27, 2022.  His primarily claim is that Emouna was
constitutionally ineffective for failing to investigate funds
held by Manheim, one of the auction companies through which he
and his brother sold vehicles, (*see supra* p. 3), which Gali
contends he could have relied on to secure a less severe
sentence, (*see* Mot. 5f-j).  When Manheim discovered that
vehicles sold by Chase Auto and Conestoga had rolled back
odometers, it retained several titles and monies paid by Chase
Auto for vehicles it purchased.  (ECF No. 114, Gov't's Resp. in
Opp'n ("Opp'n") 7.)  That act prompted Chase Auto to sue
Manheim.  (*See* ECF No. 114-2.)  The parties stipulated to
dismiss the Chase Auto civil case in 2010, and Manheim had no
further contact with the Galis since then.  (Opp'n 7, *see* ECF
No. 114-3.)

Gali and the Government dispute facts regarding Manheim
that occurred after the Galis' sentencing.  The Government's
account is that it issued a press release noting the $3,936,000

restitution amount after the Galis' sentencing.  *See*
https://perma.cc/SSE2-YHVR.  Manheim's attorney saw the press
release and called the Government's attorney on September 21,
2021, to inform her that Manheim was holding over $200,000 from
the sale of Chase Auto vehicles.  (ECF No. 114-1, Aff. of
Anthony E. Bush ("Bush Aff.") ¶ 7.)  On the call, Manheim's
attorney asked whether the money Manheim was holding could apply
toward the restitution, explaining that it was considering
depositing the money into Court if Gali and his brother would
sign "hold-harmless" releases.  (*Id.*)  The Government then
conveyed to Manheim over a series of subsequent communications
that it had contacted the Galis' counsel.  (Opp'n 8.)  The
Government also sent Manheim the judgments stating the
restitution amount, the Clerk of Court's address for payment,
and information about the facilities where the Galis were
incarcerated in case Manheim wished to contact them directly.
(*Id.*)  The Government then spoke to Gali's attorney on
October 5, 2021, the day after he surrendered to the Bureau of
Prisons.  (*Id.*)  The Government contends that before these post-
sentencing communications, Emouna had no knowledge of the civil
suit between Chase and Manheim or the funds Manheim was holding.
(*Id.* 9.)

Gali's account is that Chaim's attorney informed him before
sentencing that the Government had contacted Chaim to inform him

10

about the funds Manheim was holding.  (Mot. 5e.)  Gali states
that Manheim "had already allegedly repaid" $200,000 "to the
victims in [restitution]" and that he and his brother
"collectively agreed to have the remaining $200k also
contributed to the restitution obligation." (*Id.*)  Gali alleges
that Emouna never informed him about Manheim's position and that
Gali did not learn of the funds until after his sentencing.
(*Id.*)  He further alleges that Emouna "took absolutely no
necessary steps whatsoever" to investigate the funds despite
Gali having "repeatedly made Mr. Emouna fully aware of the
availability of the money." (*Id.* 5j.)  Emouna's affidavit
states that Gali never told him about the Manheim litigation or
the funds.  (Emouna Aff. ¶ 13.)

Gali's sister, Susan, has filed an affidavit stating that
she retained Emouna on Shmuel's behalf in July 2019 and
discussed the Manheim funds with Shmuel and Emouna in January
2020 and November 2020.  (ECF No. 118, Aff. of Susan Gali
("Susan Aff.") ¶¶ 3-5.)  She further states that before Shmuel's
sentencing, she "indicated to Mr. Emouna that Shmuel Gali was
hoping to use these funds as restitution to the victims" and
"wished to disclose to the government the existence of these
funds." (*Id.* ¶ 6.)

## LEGAL STANDARD

A person in federal custody may collaterally challenge his

or her conviction or sentence by filing a motion to vacate in accordance with 28 U.S.C. § 2255.  *Kassir v. United States*, 3 F.4th 556, 566 (2d Cir. 2021).  Relief under Section 2255 is generally available only for a constitutional error, lack of jurisdiction, or fundamental defect that inherently results in a miscarriage of justice.  *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008).  The motion must be brought in the district that imposed the sentence.  28 U.S.C. § 2255(a).

## DISCUSSION

Gali's only asserted ground for relief is that Emouna was constitutionally ineffective,[8] (*see* Mot. 5), which Gali claims manifested in two ways.  First, Gali alleges that but for Emouna's failure to investigate the Manheim funds, he would have presented a more comprehensive restitution plan at his sentencing and thus secured a lower sentence.  (*Id.* 5f–j.) Second, he alleges that Emouna was ineffective regarding his appeal and thus seeks restoration of his appellate rights.  (*Id.*

---

[8] The Court does not construe Gali's motion to raise a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), that the Government failed to disclose exculpatory evidence.  Though the motion occasionally uses language suggestive of such a claim, (*see, e.g.*, Mot. 5g ("[T]he prosecution deliberately withheld this highly potential exculpatory evidence . . . .")), Gali's only asserted ground for relief is "[i]neffective assistance of counsel," (*id.* 5–11).  Moreover, the Government provides an affidavit from Manheim's counsel establishing that Manheim did not disclose the funds to the Government until *after* Gali's sentencing.  (Bush Aff. ¶¶ 5–8.)  Finally, Gali ultimately frames his accusations against the Government as a component of his ineffective counsel claim.  (*See id.* 5g (". . . Mr. Emouna knew or should have known himself that the government was deliberately withholding the exculpatory evidence . . . .").)

51.)

## I.  Ineffective Assistance of Counsel

The Sixth Amendment to the federal Constitution guarantees a criminal defendant the right "to have the [a]ssistance of [c]ounsel for his [or her] defen[s]e."  U.S. Const. amend. VI. In *Strickland v. Washington*, the Supreme Court interpreted "assistance" to mean "effective" assistance.  466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  An attorney renders ineffective assistance if he or she (1) performs below objectively reasonable professional standards (2) in a way that prejudices the defendant.  *Farhane v. United States*, 77 F.4th 123, 126 (2d Cir. 2023).  Prejudice occurs only when there is a substantial likelihood that the result of the proceeding would have changed but for the attorney's deficient performance.  *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

There is no reason for the court to address both elements of the *Strickland* inquiry if the defendant fails to establish one.  *Id.* at 861.  Further, the court may address the two elements in either order.  *Id.*  The Second Circuit has instructed district courts to dispose of *Strickland* claims solely for lack of sufficient prejudice without "grad[ing] counsel's performance" when it is easier to do so.  *See id.* (quoting *Mitchell v. Scully*, 746 F.2d 951, 954 (2d Cir. 1984)).

13

**A.   Failure to Investigate**

Gali's claim that Emouna failed to investigate the Manheim funds is an example of a *Strickland* claim more readily resolved based on the prejudice prong.  Gali's and his sister's affidavits purport to contradict factual statements in Emouna's affidavit as to the extent of Emouna's knowledge regarding the Manheim funds before Gali's sentencing.  (*Compare* Reply ¶ 12 *and* Susan Aff. ¶¶ 4-7 *with* Emouna Aff. ¶ 13.)  Rather than assess the relative credibility of the affiants, the Court will simply assume, "without deciding and without casting any aspersions on [Emouna]," *see Horsford v. United States*, No. 09-cr-1052 (LAK), 2013 WL 12218413, at *4 (S.D.N.Y. May 15, 2013), that Gali's account of the facts is correct and that Emouna refused his request to investigate the Manheim funds and discuss them at his sentencing, *see Garner*, 908 F.3d at 861 (assuming "without deciding . . . that there was no strategic rationale" for defense counsel's conduct and proceeding to consider whether prejudice resulted from the alleged mistake).

Even making that assumption, no prejudice would have resulted.  In the sentencing context, *Strickland* prejudice requires a reasonable probability that the court would have imposed a less severe sentence but for defense counsel's deficient performance.  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  Here, had Emouna discussed the Manheim

14

funds at Gali's sentencing, the guidelines sentence range would have remained the same.[9]  (*See* Sentencing Hr'g Tr. 44:25–47:21.) Further, the Court's sixty-month sentence already fell substantially below the low end of the guidelines sentence range.  (*See id.* 47:18–21 (seventy months).)  Thus, had Emouna come to the sentencing armed with the knowledge gained from a thorough investigation of the Manheim funds, he at most would have been able to argue for the Court to use its discretion to impose a sentence *even further* below the guidelines range.

Such an argument would not have changed the Court's sentence.  In weighing the sentencing factors as required by 18 U.S.C. § 3553(a), the Court found Gali's offense "serious" due to the magnitude of the fraud, length of time that Gali perpetuated the fraud, number of victims who suffered loss, and sophistication of the scheme.  (*Id.* 52:12–18.)  The Court considered Gali's cognitive challenges but found they did not materially impair his ability to carry out the scheme.  (*Id.* 52:19–53:7.)  The Court also considered Gali's personal

---

[9] Gali is incorrect that there is a "rebuttable presumption" that the Court either would have either lowered Gali's base offense level or departed further below the guidelines range had the Court been apprised of the Manheim funds.  (Mot. 5d.)  Gali's ability to pay restitution would not have changed the loss calculation under federal Sentencing Guidelines because his offense still would have *caused* a loss between $3,500,000 and $9,500,000.  *See* U.S. Sent'g Guidelines Manual § 2B1.1(b)(1)(J)–(K) (U.S. Sent'g Comm'n 2018). Further, there is no "rebuttable presumption" the Court would have varied further downward.  To the contrary, the burden is on Gali to show a reasonable probability that his sentence would have been lower.  *See Gonzalez*, 722 F.3d at 130.

characteristics, family history, personal circumstances, and letters of support.  (*Id.* 53:8–56:17.)  Finally, the Court rejected Gali's argument that a minimal sentence should have been imposed because the guidelines sentence range would have been only four to ten months were it not for the eighteen-level enhancement based on the large loss amount.  (*See id.* 57:3–7.) The Court explained that "the loss amount [was] a real tangible number and [went] to the losses suffered by Mr. Gali's victims" and was "not some more complex best estimate."  (*Id.* 57:8–11.) Thus, nothing in the Court's guidelines calculation or weighing of the § 3553(a) factors suggests that it would have imposed a lesser sentence had it known about the Manheim funds.

Gali correctly notes that the Court expressed concerns about restitution at other points during his sentencing.  (*See* Mot. 5d–e, h–j; Sentencing Hr'g Tr. 5:18–6:6, 18:13–14, 27:25, 28:5–29:4, 29:23–30:3, 30:9–18, 31:9–13, 36:18–37:4, 38:8–10.) The restitution amount was $3,936,000, however.  (*Id.* 61:2–5.) Taking Gali's account of the facts at face value, "$ 180k . . . had already been dispersed to certain victims" by Manheim "and another $ 236k were readily available to be disperse[d] to many more victims."  (Reply ¶ 10.)  In total, that amounts to less than eleven percent of Gali's restitution obligation.  Though that sum could have compensated some of the victims, it would have left enough uncompensated that the Court would not have

16

been motivated to modify Gali's sentence.

More importantly, the Court would not have considered *another party's* payment to Gali's victims to warrant a further discretionary reduction to an already below-guidelines sentence. Though compensating victims is one goal of restitution, an equally important goal is "requiring the defendant to accept responsibility for his or her transgressions." *United States v. McLaughlin*, 512 F. Supp. 907, 909 (D. Md. 1981). The Court's primary concern at sentencing was the lack of focus on how *Gali* would compensate his victims, not how third parties would compensate them. The Court made it quite clear that it considered Gali's *continuing* restitution obligation crucial regardless of his ability to pay. (*See, e.g.*, Sentencing Hr'g Tr. 30:14-16 ("Being able to pay I understand is important, but the law on restitution is that a Court must order restitution even if a Defendant cannot pay it. And this is a 20-year judgment."), 31:10-13 ("My point is when somebody causes a loss to another person, the law requires that they pay them back and make them whole. And little by little, bit by bit, the victims have to be compensated."), 36:18-24 ("[O]ther defendants who come before me . . . know that they have harmed people and that they owe restitution [and] have proposed a way forward, 'This is my plan' or 'I've been setting aside some money every month from my paycheck . . . .'").) Gali's ability to contribute a lump

17

sum through a third party amounting to roughly eleven percent of
the total obligation would not have been entirely irrelevant;
however, there is no reasonable probability that it would have
changed the result given Gali's already below-guidelines
sentence and the degree to which the magnitude, length, and
sophistication of Gali's scheme weighed against lowering the
sentence any further.

Gali also makes an alternative prejudice argument,
asserting that "had [he] known that Mr. Emouna would not
represent the $ 422k to the court, [he] would not have pled
guilty" and would have "insisted on going to trial." (Reply
¶ 15; *see* Mot. 5k–l.)  That is meritless. *Strickland* prejudice
in the plea context requires a reasonable probability that the
defendant would have forgone a guilty plea but for counsel's
deficient performance. *Hill v. Lockhart*, 474 U.S. 52, 59
(1985); *accord Gonzalez*, 722 F.3d at 130.  A defendant's self-
serving statement that he or she would have rejected the plea
agreement does not suffice. *See United States v. Nataniel*,
No. 15-cr-588 (MKB), 2019 WL 653137, at *8 (E.D.N.Y. Feb. 13,
2019).  Here, the evidence against Gali was overwhelming, and he
avoided considerable sentencing exposure through his plea
agreement.[10]  *See Daza v. United States*, No. 03-cv-2591 (RMB),

---

[10] Gali also alleges that Emouna was ineffective because he "failed to subject
the prosecution's obviously inaccurate 'victims loss calculation, to any
adversarial testing process even after the court acknowledged that the total

18

2004 WL 875631, at *4 (S.D.N.Y. Apr. 23, 2004).  Under these
circumstances, rejecting the agreement would have been
irrational.

Because there is no reasonable probability that the Court
would have imposed a less severe sentence or that Gali would not
have pleaded guilty but for Emouna's alleged failure to
investigate the Manheim funds and discuss them at Gali's
sentencing, no prejudice would have resulted from the allegedly
deficient performance.  *See Gonzalez*, 722 F.3d at 130.  Thus,
Gali cannot obtain relief on this ground.

**B.    Failure to Appeal**

Gali's second *Strickland* claim is that Emouna was
ineffective for "fail[ing] to file an appeal despite [Gali's]
request to do so."  (Mot. 51; *see also* Reply ¶ 25.)  The Supreme
Court has held that an attorney who "disregards specific
instructions from the defendant to file a notice of appeal acts
in a manner that is professionally unreasonable."  *Roe v.
Flores-Ortega*, 528 U.S. 470, 477 (2000).  The Second Circuit has
elaborated that such a failure comprises deficient performance

---

amount of victims and losses were inaccurate."  (Mot. 5j-k.)  This alleged
error is also an insufficient basis for relief.  Though courts construe *pro
se* filings liberally, they do not "create arguments out of whole cloth."
*United States v. Bethea*, 388 F. App'x 20, 21 (2d Cir. 2010).  Gali utterly
fails to explain how the Government's victim loss calculation was "obviously
inaccurate," and the Court will not attempt to formulate a theory for him.
Further, the Court did not find the Government's calculation "inaccurate" but
rather sought – and received to its satisfaction – clarification regarding
the loss amount.  (ECF No. 66, Plea Hr'g Tr. 16:7-21.)

for *Strickland* purposes even if the defendant waived his or her right to appeal through a plea agreement and the attorney believes the appellate waiver would render the appeal frivolous. *Campusano v. United States*, 442 F.3d 770, 771–72 (2d Cir. 2006). If the defendant shows a reasonable probability that he or she would have timely appealed but for the deficiency, a presumption of prejudice arises. *Flores-Ortega*, 528 U.S. at 483. The appropriate remedy is restoration of the defendant's right to appeal. *Id.* at 477.

When a criminal defendant's appellate counsel determines after a thorough review of the record that no non-frivolous appellate issues exist, he or she must file a brief in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967), summarizing the record and explaining why there are no non-frivolous issues. The attorney must accompany the *Anders* brief with a motion to be relieved as counsel and an affidavit stating that the attorney explained the implications of the *Anders* brief to the defendant and advised the defendant that he or she can request the assistance of other counsel or submit a response *pro se*. The defendant then must file a notice of any intent to respond within fourteen days after receiving the *Anders* brief.

If the defendant waived his or her right to appeal through a plea agreement and the attorney concludes that there is no basis to contest the validity of the appellate waiver, the

*Anders* brief need only address "certain discrete issues" related to the waiver. *United States v. Gomez-Perez*, 215 F.3d 315, 316–17 (2d Cir. 2000).

Gali cannot prevail on this claim because he suffered no prejudice. His assertion that his "appeal was never pursued," (*see* Mot. 51), is simply false. Even assuming Gali asked Emouna to file a notice of appeal and Emouna refused, Gali *did* file a notice of appeal *pro se*. (*See* Case No. 20-cr-104, ECF No. 20.) The Second Circuit accepted the notice as valid, granted Emouna's motion to withdraw, and appointed substitute counsel for Gali. Order, *United States v. Gali*, No. 21-1718 (2d Cir. Aug. 12, 2021), ECF No. 24. It was perfectly reasonable for Gali's new counsel to deem an appeal frivolous because Gali knowingly and voluntarily agreed to an appellate waiver, (*see* Plea Agreement ¶ 4), and his sentence fell below the ninety-seven month threshold necessary to trigger the waiver, (*see* Judgment 2). Gali's new counsel thus acted reasonably by following all required steps of the *Anders* procedure. *See* Mot. for Permission to Withdraw, *United States v. Gali*, No. 21-1718 (2d Cir. Dec. 10, 2021), ECF No. 41. Gali never responded to his counsel's *Anders* brief and does not attempt to contradict the statements in her supporting affidavit. "The filing of an *Anders* brief does not in itself constitute ineffective assistance of counsel." *Ulloa v. United States*, No. 10-cv-4409

21

(DLI), 2013 WL 5530680, at *6 (E.D.N.Y. Sept. 30, 2013) (quoting *Anim v. United States*, 2013 WL 4056211, at *7 *S.D.N.Y. Aug. 12, 2013)).  Thus, Gali cannot prevail on his *Strickland* claim that Emouna was ineffective for failing to protect his appellate rights.

## II.  Ancillary Relief

Based on how the Court has resolved the merits of Gali's motion, the Court denies Gali's requests for discovery, an evidentiary hearing, and appointed counsel.

Rule 6(a) of the Rules Governing Section 2255 Proceedings permits the court to authorize discovery only "for good cause." In evaluating whether good cause exists, the court considers whether the moving party likely would establish entitlement to relief if the factual record were more "fully developed." *Rodriguez v. United States*, No. 14-cv-6134 (KAM), 2020 WL 7861383, at *23 (E.D.N.Y. Dec. 31, 2020) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)).  Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the court to determine based on its review of the record and submissions whether an evidentiary hearing is warranted.  If a hearing is warranted, the court must appoint an attorney for a moving party who qualifies for appointed counsel under 18 U.S.C. § 3006A.

Here, the Court resolved the merits of Gali's claims on legal grounds, essentially accepting his account of the facts.

22

There is no reasonable likelihood that further factual development would help Gali establish entitlement to relief. Thus, Gali's ancillary requests for discovery, an evidentiary hearing, and appointed counsel are denied.

## CONCLUSION

For the reasons stated above, the Court respectfully denies Gali's motion in its entirety.  Because Gail has failed to make a substantial showing of the denial of a constitutional right, the Court denies a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2).  Additionally, the Court certifies in accordance with 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of Court is respectfully requested to serve a copy of this Memorandum and Order on Gali (BOP No. 83801-053) at RRM, 201 Varick Street, Room 849, New York, NY 10014, and note service on the docket.


**SO ORDERED.**

Dated:     December 26, 2023
           Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

23